**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IRVIN MORALES, | Civil Action No. 15-5311 (SRC) |
| Petitioner, | |
| v. | OPINION |
| THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, et al., | |
| Respondents. | |

**CHESLER**, District Judge:

Presently before the Court is the habeas petition of Petitioner Irvin Morales brought pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Following a stay and order to answer, Respondents filed an answer to the petition (ECF No. 12), to which Petitioner replied. (ECF No. 17.) For the following reasons, Petitioner's habeas petition is denied, and Petitioner is denied a certificate of appealability.

# I. BACKGROUND

In affirming Petitioner's conviction, the Superior Court of New Jersey – Appellate Division summarized background of Petitioner's conviction as follows:

> On August 23, 2001, [Petitioner] was indicted for first-degree murder, . . . first-degree kidnapping, . . . first-degree felony murder, . . . and second-degree possession of a weapon for an unlawful purpose, . . . for shooting and killing Linda M. Wilson. Specifically, it was the State's contention that after Wilson entered [Petitioner's] car in New York City on September 10, 2000, "[Petitioner] inflicted a gunshot wound to the chest area of the victim." Then, while the victim was still alive but drifting in and out of consciousness, [Petitioner] drove to Sparta, New Jersey, where he repeated shot the victim and left her to die on the roadway. Wilson's body was found

three days later.   Following several days of intensive police investigation, [Petitioner] was arrested on September 28, 2000, at his residence in Brooklyn.

On January 10, 2002, the State filed a notice of aggravating factors, seeking the death penalty. . . .

In November 2003, [Petitioner] moved to dismiss the kidnapping and felony murder counts of the indictment.  He argued that the victim was not confined against her will because she voluntarily entered [his] car, and that any confinement subsequent to the first gunshot was simply an inherent part of the murder plot, not separately punishable [under state law].  The Law Division denied the motion, finding that the grand jury had sufficient evidence to conclude that the victim's lengthy post-gunshot confinement deprived her of medical treatment and enhanced the risk of harm.  Furthermore, the confinement was found to be "separate and independent" of the later murder, which was facilitated by the kidnapping.

In February 2004, while incarcerated and awaiting trial, [Petitioner] exhibited signs of severe mental distress.  On March 8, 2004, the Law Division entered an order mandating a psychiatric evaluation of Morales's fitness to proceed to trial.

On March 23, 2004, a psychologist, Christine Joseph, Ph.D., submitted a competency evaluation report opining that [Petitioner] "was clearly competent to stand trial and . . . he showed no evidence of cognitive limitations that would interfere in his participating adequately in his defense."  The report cautioned, however, that [Petitioner] "made numerous statements to the effect that he will harm himself if given the opportunity and the possibility of acting out in a way that will be disruptive to a trial or his interactions with his attorney cannot be ruled out and close monitoring of his behavior is strongly recommended."  A subsequent report of Dr. Joseph dated May 13, 2004, stated that there was "little change in [Petitioner's] mental or emotional state since last examined in March 2004."

A neuropsychologist, Joel E. Morgan, Ph.D., also completed a mental health evaluation of [Petitioner] in March 2004.  Dr. Morgan observed that Morales "demonstrate[ed] moderately severe depression."  Dr. Morgan diagnosed [Petitioner] as suffering from bipolar disorder and "other psychiatric disturbances, including substance abuse disorders, borderline and paranoid personality disorders, and probable post-traumatic stress disorder."  As a result,

2

[Petitioner] was said to experience "disturbances of cognition and emotions" and "abnormal brain structure and function is likely."

Roger M. Harris, M.D., performed an additional psychiatric evaluation of [Petitioner]. Regarding [Petitioner]'s competency to stand trial, Dr Harris found that

> [Petitioner] understood the charges against him and the serious sanctions that can be levied against him. He had a good understanding of the roles of individuals in the court and also understood the plea bargaining process. [Petitioner] did have some difficulty with his attorney's actions and felt that they were at cross-purposes at times. He felt that [defense counsel] did not follow all his leads and [Petitioner] has felt frustrated by this lack of action. [Petitioner] also views other court personnel with suspicion.

Based on his assessment, Dr. Harris concluded that [Petitioner] was competent to stand trial, but that he required immediate psychiatric treatment.

In June 2004, the Law Division conducted hearings on [Petitioner]'s motion to be transferred to a psychiatric treatment facility pending trial. Defense counsel did not contest that [Petitioner] was competent to proceed at trial, but instead argued that [Petitioner] was "not being adequately treated by the Sussex County jail." Dr. Harris testified that [Petitioner] was competent to proceed, but [testified that Petitioner had] "major depression" with a "borderline personality disorder[,]" and "a history of cocaine dependency and cannabis use." Dr. Harris opined that [Petitioner] was not receiving adequate care at the local jail because [Petitioner]'s medication was not being monitored by a psychiatrist and he should have been evaluated daily by a psychiatrist or psychologist while on suicide watch. Furthermore, Dr. Harris was of the opinion that [Petitioner] "need[ed] to be transferred and treated in a dense psychiatric program for both his major depression and his borderline personality disorder."

Dr. Joseph testified that she had concerns that [Petitioner] was exaggerating his symptoms, probably because he wanted to be transferred from the jail. Dr. Joseph also opined that Morales was competent to stand trial, and that his needs were being addressed adequately at the jail, without the need for in-patient psychiatric treatment.

3

The Law Division found that [Petitioner] was competent to stand trial [as he was able to understand the charges against him, the role of court personnel, and the trial and plea bargaining processes, and was able to assist in his own defense].

On June 14, 2004, the court entered an order, finding [Petitioner] competent to stand trial, denying his motion to be moved from the Sussex County jail, and ordering that [Petitioner] receive weekly psychiatric consultations and medication monitoring while on suicide watch at the facility.

One year later, on June 15, 2005, an additional hearing was held regarding concerns over the adequacy of [Petitioner]'s mental health treatment at the jail.   After considering the evidence, including several interim reports from mental health providers, the court found that "the jail has complied with the provisions of [the June 14, 2004] order as it relates to . . . [e]nsuring that [Petitioner] since that time has received . . . psychiatric treatment." Nevertheless, the court permitted jail officials to transfer [Petitioner] to the Department of Corrections for further treatment, noting, "I don't believe at this point in time that there is any significant concern as to the ability of [Petitioner] to proceed toward trial with this transfer."

On November 28, 2005, [Petitioner] pled guilty, under oath, to felony murder . . . pursuant to a plea agreement providing for a sentence not to exceed forty years with thirty years of parole ineligibility.  During the plea colloquy, [Petitioner] testified that he understood his rights, he was satisfied with his lawyer's representation, he was aware of the potential penalty, and he had truthfully answered all the questions that were contained in the plea form.  [Petitioner] then stated that he committed the crime of felony murder.

Relying on [a state court rule which permitted guilty pleas without a fully admitted factual basis where the defendant had been charged with a crime punishable by death but had chosen to plead guilty to a capital offense or lesser included offense], the court permitted the State to present a factual basis for the guilty plea.  The prosecutor offered eighteen separately identified exhibits to the court, summarizing them as follows:

Those exhibits the State proffers show that on the afternoon of September 10, 2000, in the City of New York, that [Petitioner] inflicted a gunshot wound to the chest area, the upper chest area of the victim[,]

4

that he then confined her in his automobile and transported her into the State of New Jersey, specifically to the County of Sussex, Township of Sparta, where [the victim] was removed from the vehicle, and while at the Sparta location off of Route 15, in the Blue Heron Exchange area, that she suffered multiple gunshot wounds which caused her death in that location.   And we submit that that evidence suffices for the charge to which [Petitioner] is pleading guilty, felony murder, a homicide committed during the course of a kidnapping.   In terms of the unlawful confinement of [the victim], exposing her to serious bodily injury, and in fact, in this case, untimely death.

Upon the foundation of the exhibits and [Petitioner]'s allocution, the court accepted the guilty plea.

On February 3, 2006, [Petitioner] appeared for sentencing. The sentencing court noted two potential problems: first, the Presentence Report indicated that [Petitioner] made a claim of innocence,[] and, second, the court questioned the applicability of the 2001 amendments to the No Early Release Act (NERA)[.]

[Petitioner] agreed to waive an ex post facto challenge to being sentenced to a five-year period of parole supervision under the NERA.   He also stated that he did not wish to withdraw the plea, and claimed that "some of [the Presentence Report] mischaracterized to some extent what [he] had actually said."   The court sentenced [Petitioner] to thirty years incarceration subject to the NERA, with thirty years of parole ineligibility.

(ECF No. 12-5 at 1-4.)

Petitioner ultimately appealed, arguing that there was an insufficient basis for a kidnapping charge rendering his felony murder conviction improper, that the trial court improperly failed to further inquire into his competence thus rendering his guilty plea invalid, that the court erred in not requiring he admit to a factual basis for his plea, that a competency hearing was required prior to his plea and sentencing, that he was denied effective assistance of counsel, a challenge to the denial of some of his motions related to his appeal, and that the cumulative errors in his case

required the reversal of his conviction.  (*Id.* at 4-5.)  The Appellate Division affirmed the denial of his conviction in all respects.  Petitioner sought certification from the New Jersey Supreme Court, but his petition was denied.  (ECF No. 12-6.)

Petitioner thereafter filed a petition for post-conviction relief in June 2015.  (*See* ECF No. 12-8 at 5.)  Following litigation on that petition, the PCR judge dismissed Petitioner's PCR petition as untimely filed.  (*Id.* at 6.)  Petitioner appealed, and the Appellate Division affirmed the dismissal of the PCR petition as untimely.  (*Id.* at 6-9.)  The New Jersey Supreme Court once again denied Petitioner's petition for certification.  (*See*   ECF No. 12-9.)

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  The petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court.  *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, --- U.S. ---, ---,132 S. Ct. 2148, 2151 (2012).  Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts.  *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  Federal law is clearly established for the purposes of the statute where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court.  *See Woods v. Donald*, --- U.S. ---, ---, 125 S. Ct. 1372, 1376 (2015).  "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  *Id.*   Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## B. Analysis

### 1. Petitioner's factual basis claim

In his first claim, Petitioner argues that he was denied Due Process when the trial court did not require him to provide an adequate factual basis for his guilty plea before accepting his plea. A guilty plea must be made knowingly, intelligently, and voluntarily.  *See Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005.)  While this does require that a criminal defendant be informed of the "nature of the charge and the elements of the crime" by his own counsel or the court, "the failure of a state court to elicit a factual basis before accepting a guilty plea does not in itself provide a ground for habeas relief under 28 U.S.C. § 2254."  *Meyers v. Gillis*, 93 F.3d 1146, 1151 (3d Cir. 1996).  The Appellate Division rejected Petitioner's claim as meritless as a factual basis for

Petitioner's guilty plea was provided by the State and not disputed by Petitioner, who admitted his guilt as to the felony murder charge and was excused from providing the basis himself by a state court rule permitting him to evade directly admitting facts which could support a death penalty imposition. Petitioner has presented no federal law to which this finding was contrary, or which was unreasonably applied by the state courts. As Petitioner has utterly failed to show that his guilty plea was not knowing, intelligent, or voluntary, as the record makes it clear that Petitioner was informed of and aware of the nature and elements of the charges he faced, and as the failure of a state court to elicit a factual basis is in any event "not . . . a ground for habeas relief," *Meyers*, 93 F.3d at 1151, Petitioner has failed to show a valid basis for relief in his first claim, and that claim is therefore without merit.

**2. Petitioner's competency hearing claim**

In his next claim, Petitioner argues that he was denied Due Process when the state courts did not, of their own volition, order new competency hearings prior to his guilty plea and sentencing hearings. The Appellate Division rejected this argument on direct appeal, finding that the trial court had adequately addressed the competency issue more than a year prior to the guilty plea hearing, repeatedly ensured that Petitioner understood what he was doing by pleading guilty throughout his plea colloquy, and that there was no clear evidence of incompetence sufficient to require a new competency hearing in the record. (*See* ECF No. 12-5 at 6.) The Due Process Clause of the Fourteenth Amendment requires that all criminal defendants be competent when they stand trial or plead guilty. *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001). Due Process will further require a trial court to *sua sponte* inquire as to a criminal defendant's competency to stand trial where "there is reason to doubt the defendant's competence to stand trial." *Id.* Prior medical

opinions on the competency issue will always be "relevant in determine whether further inquiry is required." *Id.* (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975).

Petitioner's is not a case in which the trail court utterly failed to inquire into his competency.  Early in his criminal proceedings, the trial court conducted an extensive inquiry into his competence, including an evidentiary hearing following a trio of expert opinions.  Although the experts disagreed about the severity of Petitioner's condition, the experts largely agreed that he was competent to stand trial and able to aid in his own defense, and on that basis the trial court found him competent to stand trial.  Petitioner has presented only bald assertions to support his conclusion that the trial court should have second guessed that conclusion at the time of the guilty plea or sentencing, and has failed to show that the trial court had good reason to doubt his competence during those proceedings, especially in light of the full competency evaluation which the trial court had previously undertaken.  In light of these facts, the Appellate Division's conclusion that no further inquiry was required in this case is neither contrary to nor an unreasonable application of relevant federal law, and Petitioner has therefore failed to make out a valid basis for habeas relief in this claim.

### 3.  Petitioner's competency and factual basis related ineffective assistance of counsel claims

In his next claim, Petitioner argues that his trial counsel proved ineffective in proceeding with his plea and sentencing proceedings without disputing the state's factual basis for his plea and without seeking further competency hearings before the guilty plea and sentencing.  The standard applicable to Petitioner's claims of ineffective assistance of counsel is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984).  To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance

was deficient.  This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).  To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005).  A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances.  *Id.*  The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel.  *Id.*  In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.

Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense.  *Id.* at 692-93.  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."  *Id.* at 693.  The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694; *see also Shedrick*, 493 F.3d at 299.  Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief.  *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010).  "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

On direct appeal, the Appellate Division rejected Petitioner's factual basis and competency related ineffective assistance of counsel claims, finding that Petitioner's claims were "entirely speculative and conclusory," especially in light of a record which clearly indicated that counsel had not been passive or uninvolved and that counsel had repeatedly addressed Petitioner's mental health issues with the trial court.  (*See* ECF No. 12-5 at 6-7.)   This decision was neither contrary to, nor an unreasonable application of the *Strickland* standard.  Petitioner has failed to show that counsel was ineffective and has provided nothing but speculation and conclusory allegations to suggest that counsel should have opposed the factual basis provided by the state or sought further competency proceedings.  Counsel was intimately familiar with Petitioner's condition and mental health treatment and had repeatedly raised the issue to the attention of the trial court which found Petitioner competent to stand trial.  In light of this finding, and the fact that Petitioner has provided no basis through which counsel *could* have opposed the State's factual basis – which was provided solely so that *Petitioner* could avoid directly testifying to facts which could, at the time, have supported capital punishment – while Petitioner was still ready and willing to proceed with admitting his guilt to felony murder and pleading guilty, Petitioner has utterly failed to show that his trial counsel was deficient or that he was prejudiced by any such deficiency.  As the Appellate Division's findings were not contrary to or an unreasonable application of federal law, and as Petitioner has failed to make out ineffective assistance, these claims fail to set forth a valid basis for habeas relief.

11

**4. Petitioner's defaulted claims**

In his next series of claims, Petitioner contends that he was improperly denied ancillary services leading to one of his attorney's withdrawing, that he was denied the ability to seek a *Faretta* hearing as to a desire to represent himself, that his counsel failed to properly investigate his case, and that appellate counsel failed to press certain claims on appeal.  These claims were not raised on direct appeal, but raised for the first time in Petitioner's post-conviction relief petition which was denied as untimely filed.   On appeal, Petitioner challenged chiefly the time bar application and only briefly mentioned his merits claims, a tact he continued in pursuing certification unsuccessfully.   Because Petitioner only referred to his merits claims in ancillary fashion in his appellate briefs during PCR proceedings, Respondents contend that these claims are unexhausted, warranting dismissal of the petition.  Because the Appellate Division's finding that the PCR petition itself, including these claims, was untimely filed, and the state supreme court denied certification, however, it is clear that Petitioner's claims are subject to a clear and adequate state procedural bar – the PCR time bar imposed upon Petitioner's claims – which is independent of the merits of his federal claims.   Petitioner's claims are thus not truly unexhausted, but are instead procedurally defaulted. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (claims which would otherwise be unexhausted which are subject to a clear state procedural bar "result[s] in a procedural default of those claims").

Pursuant to the procedural default doctrine , , "federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds."  *Dretke v. Haley*, 541 U.S. 386, 392 (2004).   Habeas courts may therefore not review the wisdom of state law procedural hurdles, and may in turn generally "not address the merits of a procedurally-defaulted claim if the state court opinion includes a plain statement indicating the judgment rests

12

on a state law ground that is both "independent" of the merits of the federal claim and an "adequate support for the court's decision." *Campbell v. Burris*, 515 F.3d 172, 176 (3d Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). A habeas petitioner may only obtain relief on a claim which has been procedurally barred by such a state court ground where he either shows cause and actual prejudice for the default, or that he is actually innocent of the crime for which he was convicted. *Dretke*, 541 U.S. at 393.

In this matter, Petitioner's claims were clearly subjected to an adequate and independent state procedural bar – the five year PCR petition time bar – and he may no longer pursue any of his current claims at the state court level. His remaining claims, other than his cumulative error claim, are therefore clearly procedurally defaulted. *Id.*; *O'Sullivan*, 526 U.S. at 848. As Petitioner has not shown that he is actually innocent of the charged crimes, and has failed in any way to show cause for his failure to timely pursue PCR relief, he has in turn failed to provide any basis through which this Court could consider his defaulted claims. Petitioner's remaining non-cumulative error claims are therefore barred, and provide no basis for habeas relief. *Id.*

## 5. Petitioner's cumulative error claim

In his final claim, Petitioner contends that, even if his individual claims do not warrant relief, he should be granted habeas relief as the claims in the aggregate show that he was denied Due Process. Because all of his remaining claims are either without merit or are clearly procedurally barred and can provide no basis for habeas relief, however, those claims provide no cumulative basis for habeas relief. *See, e.g., Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (cumulative error analysis merely aggregates claims together will only warrant relief where the claims together were not harmless and caused actual prejudice), *cert. denied*, 552 U.S. 1108

(2008).  Petitioner has therefore failed to show any valid basis for habeas relief, and his petition must therefore be denied.

## III.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As all of Petitioner's claims are either clearly barred or are without merit for the reasons discussed in this opinion, he has failed to make a substantial showing of the denial of a constitutional right, and Petitioner is therefore denied a certificate of appealability.

## IV.  CONCLUSION

For the reasons set forth above, Petitioner's habeas petition (ECF No. 1) is **DENIED**, and Petitioner is **DENIED** a certificate of appealability.  An appropriate order follows.

/s/ Stanley R. Chesler
Hon. Stanley R. Chesler
United States District Judge

Date:  June 30, 2022